**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RELLEN HOUSTON CLARK,

    Plaintiff,

vs.                                          CASE NO. 3:09-cv-901-J-34TEM

SCHOOL BOARD OF BRADFORD
COUNTY, FLORIDA,

    Defendant.
_____

## REPORT AND RECOMMENDATION[1]

This case is before the Court on referral by the Honorable Marcia Morales Howard. Defendant's Motion to Enforce Settlement Agreement and Memorandum of Law in Support of Defendant's Motion to Enforce Settlement Agreement (Doc. #37) was filed on May 18, 2010. Plaintiff, Rellen Houston Clark, filed a Motion to Set Aside Mediation Agreement on May 24, 2010 (Doc. #36).[2] Both motions have been referred to the undersigned for preparation of a report and recommendation (Doc. #39).

### I. Background Facts and Procedural History

On September 2, 2009, Plaintiff filed a complaint in this Court against Defendant seeking to recover lost wages and damages for hardship she allegedly suffered due to

---

[1] Any party may file and serve specific, written objections hereto within FOURTEEN (14) DAYS after service of this Report and Recommendation. Failure to do so shall bar the party from a *de novo* determination by a district judge of an issue covered herein and from attacking factual findings on appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); and, Local Rule 6.02(a), United States District Court for the Middle District of Florida.

[2] This Court notes that Plaintiff's the certificate of service in Plaintiff's motion to set aside was dated May 5, 2010; however, the motion was filed on May 24, 2010.

illegal discrimination by the Defendant. Plaintiff claims Defendant terminated her position as principal and teacher at The Believer's School of Learning, Inc., in Starke, Florida, because of her race (Doc. #1). Plaintiff is proceeding in this action on a *pro se* basis. During the course of this action, the parties were required to attend mediation by July 19, 2010 (*see* Doc. #23, Case Management and Scheduling Order). A stipulation concerning the mediation was filed on March 23, 2010 by the Defendant (Doc. #28). The parties met and mediated this case on May 3, 2010, with Mr. David Sacks, Esq., serving as mediator (Doc. #34).

Plaintiff attended the mediation with Mr. Willie Houston (*see* Doc. #36).[3] Defense counsel Lisa Augspurger, along with co-counsel Maria Dawson, the Director of Risk Management for the Northeast Florida Educational Consortium and Mr. Randy Whytsell, an authorized representative for the Bradford County School Board, appeared on behalf of Defendant (Doc. #36). Plaintiff, Ms. Augspurger, Mr. Whytsell and the Risk Management Director, signed the settlement agreement that indicated the full and final resolution of this matter.

Following the mediation, Defendant filed a notice of settlement (Doc. #32) and Mr. Sacks filed a Mediation Report (Doc. #34). The report advised the Court that the case had been resolved at the May 3, 2010 mediation conference (*see* Doc. #34). In due course, the Court entered an order requiring the parties to file the appropriate documents to close this

---

[3]The record is unclear whether Mr. Houston remained with Plaintiff throughout the duration of the mediation conference. It appears Mr. Houston was not present during the initial joint meeting between the parties (*see* Tr. 1 at 11), or when Plaintiff executed the settlement agreement (*see* Tr. 1 at 10). Mr. Houston did not sign the settlement agreement, although he is mentioned in the agreement and bound by its terms of confidentiality.

case no later than July 6, 2010 (Doc. #33). However, on May 18, 2010, Defendant filed a response to Plaintiff's motion to set aside the mediation agreement, which had not yet been filed with the Court (Doc. #35). On May 24, Plaintiff filed her motion to set aside mediation agreement (Doc. #36) and Defendant again responded in opposition (Doc. #37). Plaintiff claimed in her motion that she was "pressured, threaten [sic] and coerce [sic] into signing the agreement" (Doc. #36). Plaintiff also alleged that she decided not to continue with the agreement at the time of mediation, and the mediator informed her that because she had signed the agreement, her only recourse would be to file a motion with the Court (Doc. #36). Plaintiff declared in her motion that she no longer wishes to settle her claims pursuant to the settlement agreement (Doc. #36).

At the conclusion of the mediation, the parties executed the now disputed settlement agreement. Although the agreement included a confidentiality provision, Plaintiff actually violated that provision by attaching the settlement to her Motion to Set Aside Mediation Agreement (*see* Doc. #36). Plaintiff refused to accept Defendant's tender of settlement funds that was offered on June 1, 2010 (*see* Doc. #38). Defendant notified the Court of Plaintiff's refusal to fulfill her obligations under the settlement agreement and requested the Court enforce the agreement as drafted (Doc. #38).

The Court has held two evidentiary hearings in this matter. The first hearing was held on August 19 and the second was held on October 6, 2010. The transcripts of the proceedings have been filed in the record (Docs. #47 and #51) (hereinafter referred to as "Tr. 1" and "Tr. 2" followed by the appropriate page number).

**II. Discussion**

In the motion to enforce, Defendant asserts that the parties have a valid settlement agreement and this Court should enforce the agreement against Plaintiff because Plaintiff does not have any legitimate basis to rescind the agreement (Doc. #38). More specifically, Defendant contends that Plaintiff's claim failed to show any reason in fact or law to require the agreement be set aside (*see* Doc. #37 at 4; Doc. #38 at 4).

In her motion to set aside the agreement, Plaintiff implies that she validly revoked the agreement because she was pressured, threatened and coerced into signing it (Doc. #36). Plaintiff alleges that after she signed the agreement and changed her mind, Mr. Sacks informed her that she should file a motion to dismiss with the Court (Tr. 1 at 16; Doc. #36).

During the course of the two hearings, Defendant's counsel advised Defendant remains willing to proceed with the terms of the agreement as written, including tender of a check in the previously agreed upon amount to Plaintiff (Tr. 1 at 44, 54; Tr. 2 at 22).

Federal courts do not have jurisdiction to enforce a settlement agreement once the suit has been dismissed, unless the court specifically retained authority to do so or incorporated the terms of the agreement into its dismissal order. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 380-82 (1994). However, when, as in this case, a party seeks to enforce a settlement agreement before the case is dismissed, the federal court does have jurisdiction to entertain and resolve such a request. *Kent v. Baker*, 815 F.2d 1395, 1396, 1399-1400 (11th Cir. 1987) (per curiam). A party seeking to enforce a settlement agreement bears the burden of showing, by the preponderance of the evidence, that "the opposing party assented to the terms of the agreement." *Spiegel v. H. Allen Holmes, Inc.*,

834 So.2d 295, 297 (Fla. 4th DCA 2002); *see also River City Wholesale Florist, Ltd. V. Equiflor Corp.*, 864 So. 2d 21, 21 (Fla. 3d DCA 2003) (per curiam); *Williams v. Ingram*, 605 So. 2d 890, 893 n.2 (Fla. 1st DCA 1992).

### A. **Whether Plaintiff and Defendant entered into an enforceable settlement agreement**

The Court must examine Florida law to determine whether the parties to this action reached an agreement that should be enforced. *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000) (per curiam); *Schwartz v. Fla. Bd. Of Regents*, 807 F.2d 901, 905 (11th Cir. 1987). Florida courts favor enforcement of settlement agreements whenever possible. *See Spiegel v. H. Allen Holmes, Inc.*, 834 So. 2d 295, 297 (Fla. 4th DCA 2002). Notwithstanding this preference, in order to enforce a settlement agreement, "its terms must be sufficiently specific and mutually agreed upon as to every essential element." *Id.* at 297; *see also Gaines v. Nortrust Realty Mgmt., Inc.*, 422 So. 2d 1037, 1039 (Fla. 3d DCA 1982). An enforceable settlement agreement exists "if the parties agree on the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974). If there is a meeting of minds as to the essential terms of a settlement agreement, it is subject to enforcement by the Court. Thus, a court may enforce a settlement agreement if the agreement is complete and definite. *See Murchison v. Grand Cypress Hotel Corp.*, 13 F.3d 1483, 1486 (11th Cir. 1994).

In the case at bar, Plaintiff does not dispute that the parties executed a valid settlement agreement, nor does she dispute the terms of the agreement (Doc. #36). During the first evidentiary hearing, Plaintiff acknowledged signing the agreement (Tr. 1 at

10). Thus, because at the time that the parties executed the settlement agreement they agreed upon the essential terms of the agreement, an enforceable contract between the parties was created. Indeed, by signing the settlement agreement, which specifically provided that Plaintiff agreed to the full and final resolution of this matter, Plaintiff acknowledged that she had a binding settlement agreement with Defendant.

The settlement agreement is specific as to the terms agreed upon by the parties. It provided for a specific amount of money to be paid in exchange for dismissal of the case with prejudice. The mediated settlement agreement addressed only resolution of the instant case and set forth that the detailed terms of the agreement can not be disclosed to persons outside of this case. Thus, the undersigned finds that the parties entered into a binding agreement on May 3, 2010.

### B. Whether Plaintiff may rescind the enforceable Settlement Agreement between the parties based on alleged pressure, threats and coercion during the mediation.

Once an enforceable agreement has been reached, a party is not permitted to unilaterally repudiate that agreement. *See Reed ex rel. Reed v. United States*, 891 F.2d 878, 881 n.2 (11th Cir. 1990); *Silva v. Silva*, 467 So. 2d 1065, 1065 (Fla. 3d DCA 1985). Nevertheless, a court may decline to enforce a settlement agreement if the settlement agreement was procured through fraud or duress attributable to one of the contracting parties. *See Vitakis-Valchine v. Valchine*, 793 So. 2d 1094, 1096 (Fla. 4th DCA 2001). In order to set aside a settlement agreement based upon a claim of duress, the moving party must prove two elements: (1) the settlement agreement was executed involuntarily, and thus not as a choice of free will; and, (2) the other contracting party exerted some improper

and coercive conduct over the moving party to effectuate the settlement.  *See City of Miami v. Kory*, 394 So. 2d 494, 497 (Fla. DCA 1981).  Duress results from "an improper external pressure or influence that practically destroys the free agency of a party and causes him to do an act or make a contract not of his own volition."  *Id.* at 497; *see also Anderson v. City of Crystal River*, No. 5:03-CV-296-OC-10GRJ, 2006 WL 1360906, at *3 (M.D. Fla. May 18, 2006).

Generally, only improper influence from one of the contracting parties to a settlement will be sufficient to set aside a settlement agreement on the basis of fraud, duress or coercion.  *See Anderson*, 2006 WL 1360906, at *3 (denying plaintiff's claim to rescind settlement agreement based upon duress, in part, because the alleged duress "emanated from someone other than one of the contracting parties" to the settlement agreement); *Vitakis-Valchine*, 793 So. 2d at 1096.  However, at least one court has considered whether a settlement agreement should be set aside where a mediator committed misconduct by improperly influencing and coercing a party to the agreement.  *See Vitakis-Valchine*, 793 So. 2d at 1098-99.

In *Vitakis-Valchine*, the Fourth District Court of Appeal reversed in part the trial court's denial of the appellant's motion to set aside a mediated marital settlement agreement and remanded the case for an evidentiary hearing.  *See id.* at 1100.  In doing so, the court noted that the appellant's allegations that the mediator coerced her into settlement by (1) advising her that the court would never find in her favor, (2) threatening to report to the trial court that settlement failed because of her, and (3) exerting pressure to sign the agreement within five minutes, if true, would support a finding of misconduct on the part of the mediator.  *See id.* at 1097, 1099.  The court found that it would be

"unconscionable for a court to enforce a settlement agreement reached through coercion or any other improper tactics utilized by a court-appointed mediator." *Id.* at 1099 (footnote omitted). As such, it concluded that a court could set aside such an agreement based upon the court's "inherent power to maintain the integrity of the judicial system." *Id.*

In the case at bar, despite her regrets about entering into the settlement agreement, Plaintiff cannot unilaterally rescind the agreement. Plaintiff has failed to identify any improper conduct attributable to Defendant or misconduct by Mr. Sacks. Moreover, Plaintiff's assertion that she executed the settlement agreement as a result of pressure fails because Plaintiff cannot establish that she involuntarily executed the agreement.

Plaintiff alleges she was threatened when defense counsel advised her at the mediation that Defendant may pursue attorneys' fees in the event Defendant won the suit (Tr. 1 at 7). Defense counsel contends that during the joint discussion, Defendant informed Plaintiff that according to procedural rules, if Defendant were to win on the pending motion to dismiss, it may seek reimbursement of attorneys' fees and costs on a frivolous case (Tr. 1 at 52). The information relayed to Plaintiff about attorneys' fees was given during a joint discussion with the mediator present. The undersigned finds the Defendant's act of informing Plaintiff of a possible claim does not rise to a level of coercion or support Plaintiff's claim that she was placed in a state of duress.

Plaintiff also testified that Mr. Sacks instructed her to go ahead and sign the settlement agreement, and thereafter file a motion to dismiss with the Court (Tr. 1 at 9). This allegation also fails. Mr. Sacks testified during the October 6 hearing. In response to the Court's inquiry, Mr. Sacks stated he would never allow a party to sign an agreement if the party were showing signs of duress, nor would he give legal advice to a party during

mediation (Tr. 2 at 12). Mr. Sacks also testified that in his position as a mediator he would never tell a party to sign an agreement and subsequently file a motion to dismiss because such action would constitute the giving of legal advice (Tr. 2 at 12). Mr. Sacks' testimony before this Court was, however, limited due to confidentiality rules.

Upon consideration, the Court finds there is no evidence that Mr. Sacks forced Plaintiff to sign the agreement, or exercised any coercion or undue pressure. *See Crupi v. Crupi*, 784 So. 2d 611, 613-14 (Fla. 5th DCA 2001) (agreeing with the trial court's finding that three Xanax pills, and anxiety and pressure to settle were insufficient proof of coercion to set aside a settlement agreement). Plaintiff has not established any misconduct on behalf of Mr. Sacks that would render the settlement unconscionable.

Plaintiff claims she would not have known to file a motion to dismiss the agreement following the settlement if Mr. Sacks had not informed her of that option. This Court finds that assertion without merit. Plaintiff filed numerous motions in this action prior to filing her motion to set aside the mediation agreement. Moreover, Plaintiff has initiated at least one additional lawsuit in state court, as well as an administrative action against this same Defendant (*see* Tr. 1 at 9, 12-13; *see also* Tr. 1 at 17-23). Plaintiff's status as a *pro se* litigant does not appear to have hindered her ability to seek relief from the courts for alleged wrongdoing. This Court further notes that Plaintiff has a master's degree in an unspecified discipline (Tr. 1 at 30). Due, in part, to Plaintiff's educational background and familiarity with the court system, the undersigned finds she was capable of either asking questions or refraining from signing the settlement agreement, in the event she did not understand the language within the four corners of the document.

Plaintiff also alleges that she was told she must dismiss all pending legal actions

against Bradford County School Board (Tr. 1 at 15). This allegation appears to be unfounded. The settlement agreement provided all claims within the instant case were to be released and the case dismissed with prejudice. Other than Plaintiff's testimony, there is no indication Plaintiff would be precluded from pursuing her claims pending outside of this litigation, or any future claims unrelated to the case at bar.

Plaintiff testified that immediately after signing the settlement agreement, she expressed to Mr. Sacks that she had changed her mind (Tr. 1 at 16). Plaintiff stated to the Court that one reason she changed her mind about settling this litigation was because she desired to pursue the case regarding the "suspension and probation" of her teaching license (Tr. 1 at 15). When questioned by the Court during the August 19 evidentiary hearing, Plaintiff testified that even if she were not prevented from pursuing her other claims, she was not "satisfied with the amount of money that was settled" in this case (Tr. 1 at 15).[4]

It appears to the undersigned that Plaintiff's source of dissatisfaction with the settlement agreement lies not with any perceived threat or coercion, but results from a change of heart over the dollar amount of the settlement. Thus, the undersigned finds that Plaintiff cannot rescind an agreement simply because she was not satisfied with the agreement she had entered on her own volition.

It is noteworthy for the undersigned to again mention that Defendant remains willing to proceed with the terms of the settlement agreement as executed during the mediation,

---

[4]The record indicates there was typical negotiation throughout the course of the mediation, which included give and take on the amount of monetary settlement that the parties were willing to accept.

regardless of the fact that the confidentiality provision has been violated (Tr. 2 at 22). Further, Defendant does not intend to pursue recovery of fees from Plaintiff if the settlement agreement is enforced (Tr. 1 at 54).

### III. Conclusion and Recommendation

If the Plaintiff had entered a settlement agreement while under duress created by the Defendant's representative or defense counsel, or because of misconduct by the mediator, this Court would be inclined to find that Plaintiff properly revoked the agreement. However, such is not the case in this instance. It is clear that the parties reached an enforceable agreement at the mediation conference. This Court finds no evidence the Plaintiff suffered any duress, or even a misunderstanding, at the time she entered the agreement.

Accordingly, it is respectfully recommended Defendant's Motion to Enforce Settlement Agreement (Doc. #38) be **GRANTED** and Plaintiff's Motion to Set Aside Mediation Agreement (Doc. #36) be **DENIED**. It is further recommended the District Court:

(a) direct Defendant to furnish Plaintiff with the monetary sum noted in the mediation settlement agreement;

(b) instruct Plaintiff to sign and execute a complete release of all claims in this action, which Defendant shall provide;

(c) remove the Mediated Settlement Agreement attached to Plaintiff's Motion to Set Aside Mediation Agreement (Doc. #36, pp.3-4) from the public record of this case and file it under seal; and,

(d) dismiss this case with prejudice.

**DONE AND ENTERED** at Jacksonville, Florida, this 13th day of October, 2010.

*/s/ Thomas E. Morris*
**THOMAS E. MORRIS**
United States Magistrate Judge

Copies to:

The Honorable Marcia Morales Howard
United States District Judge

All counsel of record
and *pro se* Plaintiff